IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BMO BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:25-cv-294-ECM |
| | ) | [WO] |
| GILMORE TRUCKING LLC, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

On April 17, 2025, BMO Bank, N.A. ("BMO") sued Gilmore Trucking LLC ("GT") and Willie Gilmore ("Gilmore") (collectively, the "Defendants") for defaulting on three purchase-money loans for four flatbed trailers (the "Collateral").[1] (*See* doc. 1 at 2–7, paras. 9–43).[2]

BMO brings two causes of action: breach of contract against GT (Count IV) and breach of guaranty against Gilmore (Count V).[3] (*Id.* at 11–12, paras. 72–88). On these claims, BMO seeks an order that: (1) enjoins GT and "other persons and firms having knowledge of the injunction" from further use of the remaining trailer (the "Retained Collateral") and requires the disclosure of its location; (2) compels specific performance

---

[1] BMO has recovered three of the trailers, two during the pendency of this suit. (Doc. 1 at 6, para. 34; doc. 13-1 at 7, para. 28).

[2] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

[3] Though styled as causes of action, "Injunctive Relief" (Count I), "Specific Performance" (Count II), and "Writ of Replevin" (Count III) are certain remedies BMO seeks for breach of contract and breach of guaranty. (*See* doc. 1 at 8–11, paras. 44–71; doc. 13 at 2–3).

of GT's contractual obligations; (3) awards damages for GT's breach of contract and Gilmore's breach of guaranty; (4) grants BMO possession of the Retained Collateral via a writ of replevin; and (5) awards interest, costs, and attorney fees. (*Id.* at 12–13).

Following proper service on April 22, 2025 (docs. 6–7), the Defendants failed to plead or otherwise defend. Consequently, on May 29, 2025, BMO filed an application for a Clerk's entry of default against the Defendants. (Doc. 8). The Clerk of the Court entered default, (doc. 9), and BMO moved for default judgment, (doc. 10). The Court denied that motion because BMO "failed to set forth the elements for any of its claims and to demonstrate how the well-plead allegations in the complaint establish each element." (Doc. 12 at 4). The Court further required, in any new motion for default judgment, that BMO

> shall specifically address: (1) upon which claims it seeks judgment; (2) the applicable substantive law supporting *each* claim (as to *each* defendant); (3) the elements under which default judgment is sought; (4) the specific, well-plead facts in the complaint that satisfy each element; (5) the connection of any requested damages (including costs, attorney fees, and interest) or other relief to specific claims; (6) the authority supporting those damages or other relief; and (7) the evidence in support of its damages figures or calculations.

*Id.* at 4–5 (emphasis in original).

On December 15, 2025, BMO renewed its motion for default judgment. (Doc. 13). Therein, BMO seeks default judgment against GT on the breach for contract claim and against Gilmore for the breach of guaranty claim. (*Id.* at 3). BMO seeks all five of the remedies mentioned above. (*Id.* at 2–3). Because a writ of replevin is a prejudgment

2

order, the Court construes BMO's motion for default judgment as including an application for a writ of replevin to secure potential judgment.

After careful review of BMO's motion and briefing, and for the reasons that follow, the construed application for a writ of replevin to secure potential judgment is due to be DENIED, and the motion for default judgment against the Defendants is due to be GRANTED in part and DENIED in part.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## II. LEGAL STANDARD

A default judgment may be entered when a defendant "has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). While the Eleventh Circuit has a "strong policy of determining cases on their merits" and "therefore view[s] defaults with disfavor," *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003), it is well-settled that a "district court has the authority to enter default judgment for failure . . . to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

"When a defendant defaults, he 'admits the plaintiff's well-pleaded allegations of fact.'" *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) (quoting *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015)). And the standard for default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir.

3

2015) (citation omitted).  Therefore, "[t]he allegations must be well-pleaded in order to provide a sufficient basis for the judgment entered." *De Lotta v. Dezenzo's Italian Rest., Inc.*, 2009 WL 4349806, at \*1 (M.D. Fla. 2009) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)).[4]  A complaint is "well-pleaded" when it satisfies the requirements set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Specifically, "the factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

Even where a plaintiff satisfies the pleading requirements, "the Court [still must] determine[] the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).  The court may—but is not required to—hold a hearing before entering an award for damages with a default judgment. *See Giovanno*, 804 F.3d at 1366 ("Given its permissive language, Rule 55(b)(2) does not require a damages hearing in every case.").  But "[d]amages may be awarded without an evidentiary hearing 'only if the record adequately reflects the basis for award via . . . a demonstration by detailed affidavits establishing the necessary facts.'" *Robbie's of Key West v. M/V Komedy III*, 470 F. Supp. 3d 1264, 1268 (S.D. Fla. 2020) (second alteration in original) (quoting *Adolph Coors Co. v. Movement Against Racism & Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)).

---

[4] Here and elsewhere, the Court cites to nonbinding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

## III.  FACTS[5]

Over the course of about a year, BMO and GT made three agreements for the financing of four flatbed trailers.  On May 4, 2021, GT entered into a loan and security agreement with BMO. (Doc. 1 at 2, para. 10; doc. 1-1).  Therein, GT agreed to repay the loan with fees and interest in exchange for financing two flatbed trailers. (Doc. 1 at 2–3, para. 10; doc. 1-1 at 2).  The trailers acted as collateral under the agreement. (Doc. 1 at 3, para. 11; doc. 1-1 at 3, para. 2.1).  GT began making monthly payments as agreed. (Doc. 1 at 3, para. 11).

Then, GT needed another trailer.  On May 19, 2022, BMO and GT entered into a second loan and security agreement. (Doc. 1 at 3, para. 12; doc. 1-2).  Like the first agreement, GT agreed to repay the loan with fees and interest in return for the financing of an additional trailer. (Doc. 1 at 3, para. 12; doc. 1-2 at 2).  That trailer also acted as collateral. (Doc. 1 at 3, paras. 12–13; doc. 1-2 at 3, para. 2.1).  GT began making monthly payments on the additional trailer as agreed. (Doc. 1 at 3, para. 13).

And then another.  On May 27, 2022, BMO and GT entered into a third loan and security agreement. (Doc. 1 at 3, para. 14; doc. 1-3).  Like the other agreements, GT agreed to repay the loan with fees and interest in return for financing an additional trailer. (Doc. 1 at 3, para. 14; doc. 1-3 at 2).  BMO financed this fourth trailer, which also acted

---

[5] This recitation of facts is based on the well-plead factual allegations in the complaint, admitted by the Defendants for default judgment purposes. *Giovanno*, 804 F.3d at 1366.  The Court also reviewed the exhibits attached to the complaint, (docs. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6). *Nationstar Mortgage, LLC v. Holliday*, 2023 WL 2777943, at *1 (N.D. Ala. 2023) ("Attachments to a complaint are 'part of the pleading for all purposes.'") (quoting FED R. CIV. P. 10(c)).  The Court also considers the motion for default judgment and its attached declaration with sources (docs. 13, 13-1). *See Ala. Treatment, LLC v.*

as collateral. (Doc. 1 at 4, para. 15; doc. 1-3, at 3, para. 2.1).  GT began making payments on the trailer as agreed. (Doc. 1 at 4, para. 15).  BMO retained the title certificates to the Collateral and recorded its interest in each trailer as first lienholder. (*Id.* at 4, para. 19; doc. 1-4).

Contemporaneously with each of BMO and GT's agreements, Gilmore, GT's sole member, signed guaranties of performance by GT under the agreements. (Doc. 1 at 1, 4 para. 2, 4).  Under the guaranties, Gilmore agreed to make payments in the event of nonpayment by GT under the loan agreements. (*Id.* at 5, para. 25; *see generally* doc. 1-5). However, GT defaulted on each of the three loan agreements on March 4, 2025, November 1, 2024, and January 1, 2025, respectively. (Doc. 1 at 5, paras. 22–23). Gilmore failed to make any payments to cover the defaults. (*Id.* at 5, para. 25).  As a result, on March 20, 2025, BMO accelerated the balance due under the loan agreements with GT. (*Id.* at 6, para. 26).  On March 24, 2025, BMO mailed a demand to GT and Gilmore for payment. (*Id.* at 6, para. 33; doc. 1-6 at 2, 4).

Before filing this action, BMO repossessed the trailer financed under the second agreement. (Doc. 1 at 6, para. 34).  Before filing its renewed motion, BMO was also able to repossess both trailers purchased with the loan under the first agreement. (*See* doc. 13-1 at 7, para. 28).  To date, GT and Gilmore have not paid the balance or returned the remaining trailer (the "Retained Collateral"). (*See* doc. 1 at 7, paras. 38–39).

---

*Waste All., Inc.*, 533 F. Supp. 3d 1082, 1087 (M.D. Ala. 2020) ("Besides the pleadings, a court may also consider evidence presented in the form of an affidavit or declaration." (citation omitted)).

## IV.  DISCUSSION

### A.    Breach of Contract

"A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).  "[T]he court must characterize the legal issue" and "determine[] the choice of law rule that the forum state applies to that particular type of issue." *Id.* Here, BMO alleges breach of contract.  In contractual disputes, Alabama law requires the Court to "look to the contract to determine whether the parties have specified a particular sovereign's law to govern." *Stovall v. Universal Constr. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004).

Here, each of GT and BMO's three agreements specifies that "all credit or other financial accommodations extended by [BMO] under this Agreement shall be deemed extended from and subject to the laws of the State of Illinois . . . regardless of the location of [GT] or any of the Equipment." (Doc. 1-1 at 5, para. 7.6; doc. 1-2 at 5, para. 7.6; doc. 1-3 at 5, para. 7.6).  Accordingly, the Court applies Illinois law.[6]

BMO argues it had three express contracts with GT. (*See* doc. 13 at 5).  "The required elements of a breach of contract claim in Illinois are the standard ones of common law: '(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.'"

---

[6] The Court finds that applying Illinois law to the contracts and guaranties in this case would not be contrary to Alabama public policy. *See Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 507 (Ala. 1991).

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (citing *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.,* 493 F.3d 841, 849 (7th Cir. 2007)).

"[A]n offer is an act on the part of one person whereby he gives to another the legal power of creating the obligation called contract [by acceptance]." *McCarty v. Verson Allsteel Press Co.*, 411 N.E.2d 936, 942 (Ill. App. 1980) (citations omitted). Here, the admitted facts indicate that each of the loan and security agreements clearly specifies GT's obligations and liabilities to BMO in return for collateral which was affirmed delivered in satisfactory condition by both BMO and Gilmore. (*See* doc. 1-1 at 6; doc. 1-2 at 7; doc. 1-3 at 7). Accordingly, there was an offer and acceptance of each contract.

"Consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them." *Urb. Sites of Chi., LLC v. Crown Castle USA*, 979 N.E.2d 480, 493 (Ill. App. 2012) (citation omitted). "Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract." *Steinberg v. Chi. Med. Sch.,* 371 N.E.2d 634, 639 (Ill. 1977) (citing *Green v. Ashland Sixty-Third State Bank*, 178 N.E. 468, 470 (1931)). Here, BMO, offeror, loaned GT, offeree, money in return for payment with interest and a secured interest in the Collateral purchased with the loan. This constituted a bargained-for exchange of benefits and detriments. Accordingly, there was sufficient consideration for each contract.

"[A] contract 'is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and

8

applicable principles of equity, to ascertain what the parties have agreed to do.'" *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987) (quoting *Morey v. Hoffman*, 145 N.E.2d 644, 647–48 (Ill. 1957)). The admitted facts indicate—and the contracts themselves confirm—that BMO and GT agreed to exchange a loan in return for payment with well-defined terms of interest and a secured interest in the collateral purchased with the loan. Accordingly, because the Court can easily "ascertain what the parties have agreed to do," the terms of the contract are clearly sufficiently definite and certain under Illinois law. *See id.*

BMO performed all required conditions of each contract by financing the trailers. The Defendants breached by failing to continually make timely payments in accordance with the contracts. BMO suffered damages from nonpayment of amounts owed by GT. Therefore, BMO has established its breach of contract claim against GT, and the motion is due to be GRANTED as to Count IV.

**B.  Breach of Guaranty**

"Because a guaranty is a contractual obligation, a breach of guaranty claim is governed by the same principles as a breach of contract claim." *Amos Fin., LLC v. Szydlowski*, 214 N.E.3d 158, 166 (Ill. App. 2022) (citation omitted). The guaranties between Gilmore and BMO likewise specify that Illinois law governs. (*See* doc. 1-5 at 2–4 (Three separate guaranties, each stating, "This Guaranty is subject to and governed by the laws of the State of Illinois . . . regardless of the location of [BMO] or [GT].")). Therefore, the Court applies Illinois law to this claim as well.

The admitted facts demonstrate that Gilmore "guaranteed the full and timely performance of [GT]" on each of the three loan agreements in three separate guaranties with Plaintiff—entered into on May 4, 2021, May 19, 2022, and May 27, 2022, respectively. (Doc. 1 at 4, para. 20).  The signed agreements manifested the offer and assent to each. (*See* doc. 1-5 at 2–4).

"Typically, the consideration supporting the underlying obligation will also support the guaranty." *Tower Inv'rs, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 937 (Ill. App. 2007).  "However, where the guaranty is executed *after* the underlying obligation has been entered into, new consideration becomes necessary to support it." *Id.* (emphasis added) (citing *City Nat'l Bank of Hoopeston v. Russell*, 615 N.E.2d 1308, 1312 (Ill. App. 1993)).  Here, each of the guaranties was signed on the same day as the contracts between BMO and GT and concern those very contracts. (*Compare* doc. 1 at 2–3, paras. 10, 12, 14 *with id.* at 4, para. 20).  Accordingly, there was adequate consideration for the guaranties.

BMO performed its obligations under the guaranties by financing the trailers for GT. (*See* doc. 1-5 at 2–4 (Three separate guaranties, each stating a guarantee by Gilmore concerning "[v]aluable [c]onsideration, the receipt and sufficiency which is hereby acknowledged" with GT to "promptly and fully perform, pay[,] and discharge all of its present and future liabilities . . . to [BMO]")).  Gilmore breached his obligation by "fail[ing] to make payments when they became due." (Doc. 1 at 5, para. 25).  As with the breach of contract by GT, BMO suffered damages from nonpayment of amounts owed by

Gilmore.  Therefore, BMO has established its breach of guaranty claim against Gilmore and the motion is due to be GRANTED as to Count V.

## V.  REQUESTED RELIEF

### A.  Writ of Replevin

BMO seeks a writ of replevin against GT. (Doc. 1 at 10–11, paras. 63–71; doc. 13 at 15–17).  Per Federal Rule of Civil Procedure 64(a), "throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." FED. R. CIV. P. 64(a); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 436 n.10 (1974) (citing *id.*) ("[I]n all cases in federal court, . . . state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered.").

Among those prejudgment remedies expressly considered in Rule 64 is replevin. *See* FED. R. CIV. P. 64(b).  Replevin is "[a] writ obtained from a court authorizing the retaking of personal property wrongfully taken or detained." *Replevin*, BLACK'S LAW DICTIONARY (12th ed. 2024); *cf. Hepburn & Dundas' Heirs v. Dunlop & Co.*, 14 U.S. 179, 203 n.*d* (1816) (explaining replevin as an "action . . . where the thing sued for is specifically recovered.").

Alabama Rule of Civil Procedure 64 provides that a writ of replevin shall be issued after a plaintiff satisfies a host of procedural requirements.  First, a plaintiff must file an affidavit based on personal knowledge containing the following information:

(A) Description of Property. A description of the claimed property that is sufficient to identify the property and its location.

(B) Statement of Title or Right. A statement that the plaintiff is the owner of the claimed property or is entitled to possession of it, describing the source of such title or right and, if the plaintiff's interest in such property is based on a written instrument, a copy of said instrument must be attached to the affidavit.

(C) Statement of Wrongful Detention. A statement of specific facts which show that the property is wrongfully detained by the defendant and a statement of the cause of such detention according to the best knowledge, information and belief of the plaintiff.

(D) Statement of Risk of Injury. A statement of specific facts in support of the contention, if any, that there is risk of concealment, transfer or other disposition of or damage to the property to the injury of the plaintiff.

ALA. R. CIV. P. 64(b)(1).   Upon the filing of such affidavit, the Court is to, "without delay, . . . examine the complaint, the application and supporting affidavit and its attachments and any further showing offered by the plaintiff in support of the plaintiff's right to the immediate possession of the property." *Id.* at (b)(2)(A).

However, a writ of replevin cannot be granted merely upon the filing of such affidavit.   When "the owner of a security interest in personal property seeks to recover specific personal property prior to judgment, the requirements of [Alabama Rule 64] are *superimposed over* the statutory procedure that otherwise exists in such cases." *See* ALA. R. CIV. P. 64 committee's notes to 1973 adoption (emphasis added).   "Thus, the provisions for pre-judgment seizure that have long been found in the [Alabama] Code still apply . . . ." *Id.*   Among the procedural requirements not duplicative of Rule 64(b) is the requirement that plaintiffs must provide a bond. *See* Ala. Code §§ 6-6-250; ALA. R.

12

CIV. P. 64 committee's notes to 1973 adoption ("[T]he requirement of posting a bond as a necessary step in obtaining pre-judgment seizure . . . remains in effect but subject to the further requirements of [Alabama Rule] 64(b) in the area of affidavit and proceedings thereon.").

Here, BMO rightfully acknowledges that Alabama law governs the issuance of a writ of replevin. (*See* doc. 13 at 15–16). Nonetheless, BMO does not relate in its construed application for a writ of replevin that it has filed an affidavit for such writ pursuant to Alabama Rule 64.[7] Nor has it filed a bond. Nor has it indicated how it has attempted to meet any other procedural protections contained in the Alabama Code— which Alabama Rule 64 supplements, not supplants. Moreover, a writ of replevin is a prejudgment remedy; this case is in a final judgment posture. For these reasons, the Court finds the construed application for a writ of replevin (styled as Count III) is due to be DENIED.

## B.    Equitable Remedies

For breach of contract, BMO seeks an order that: (1) enjoins GT and "other persons and firms having knowledge of the injunction" from further use of the collateral, from restricting BMO's access to the collateral, and requiring the disclosure of the collateral's location; and (2) compels specific performance of GT's obligations under its

---

[7] BMO attached to its construed application a declaration of Nolan Broadie, litigation specialist for BMO, (*see* doc. 13-1 at 2–9), which it cites in its argument for the writ. (Doc. 13 at 16–17). Because the Court does not find a writ of replevin appropriate in this posture and without the satisfaction of other Alabama procedural requirements, the Court pretermits discussion of whether his affidavit satisfies Alabama Rule 64.

contracts with BMO and "to return and allow removal of the Retained Collateral." (*See* doc. 1 at 12–13).

Illinois law,[8] however, generally prohibits injunctive remedies where relief is available through money damages. *See Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1106 (Ill. App. 2008) (citation omitted) ("It is a well-established rule that, if a party's injury can be adequately compensated through money damages, then it has an adequate remedy at law and does not need the extraordinary remedy of injunctive relief."). "It is only when money is insufficient to compensate the injury, or when the injury cannot be properly quantified in terms of money, that injunctive relief is necessary." *Id.* at 1106–07 (citation omitted). Because the injury in this case is purely monetary and compensable by money damages, the Court finds the motion for default judgment due to be DENIED as to injunctive relief (styled as Count I).

Likewise, specific performance is unavailable "where there is an adequate remedy at law, such as money damages, unless there is some element or feature to show that the relief at law might not be adequate, such as where the measure of damages resulting from non-performance of the agreement is uncertain or difficult to ascertain." *Est. of Johnson*, 350 N.E.2d 310, 316 (Ill. App. 1976) (citation omitted). Moreover, "[s]ince personal property is ordinarily not unique, contracts relating solely to personal property will not be

---

[8] BMO incorrectly cites Alabama law for the standards for relief under a contract governed by Illinois law. *See* discussion *supra* Part IV(A) (finding that Illinois law applies). In any event, the result under Alabama law here is the same. *See Slamen v. Slamen*, 254 So. 3d 172, 176 (Ala. 2017) ("[The plaintiff's] mere allegation that, without the injunction, the defendants might be unable to satisfy a potential judgment remedying his alleged monetary loss does not transform his injury into an irreparable one that justifies injunctive relief."); *Grayson v. Boyette*, 451 So. 2d 798, 800 (Ala. 1984) ("Ordinarily, a court

specifically enforced unless the property involved has some intrinsic or special value to the complainant." *Id.* (citing *Cohn v. Mitchell*, 3 N.E. 420, 423 (Ill. 1885)).

Again, the damages here are calculable in plain monetary terms as principal plus interest, and the collateral has no value to BMO beyond its use as security for the loan. In addition, "[w]hile a plaintiff may pursue a remedy at law for damages and alternatively seek specific performance of the contract, . . . . Plaintiff cannot affirm the contract, obtain specific performance and, in essence, erase the breach, yet also seek damages at law for breach of contract." *Cf. Douglas Theater Corp. v. Chi. Title & Tr. Co.*, 681 N.E.2d 564, 569 (1997).   Allowing such would endorse "double recovery" plainly prohibited by Illinois law and broader remedies jurisprudence. *See ICD Publ'ns, Inc. v. Gittlitz*, 24 N.E.3d 898, 920 (Ill. App. 2014) (citation omitted); *see also, e.g., Kruse v. Mass. Mut. Life Ins. Co.*, 2017 WL 3494334, at *8 (S.D. Fla. 2017) (dismissing claim for specific performance as "redundant" and "duplicative" of damages for breach of contract). Accordingly, the Court finds the motion for default judgment due to be DENIED as to specific performance (styled as Count II).

## C.    Monetary Relief

BMO also seeks damages, pre- and post-judgment interest, attorney fees, and costs.  In the Court's Order denying the previous motion for default judgment, the Court stated that Plaintiff, in any new motion, "shall specifically address: the connection of any requested damages (including costs, attorney fees, and interest) or relief to specific

---

will not order specific performance of a contract relating to personalty [(moveable property)], because there is an adequate remedy at law.").

15

claims; the authority supporting those damages . . . and the evidence in support of its damages figures or calculations." (Doc. 12 at 5 (numerals omitted)).   In its renewed motion, BMO has connected its damages to the breach of contract and breach of guaranty claims (doc. 13 at 9) and provided evidence in support of its damages and interest calculations (*id.* at 9; *see generally* doc. 13-1).   However, BMO has not provided authority for the Court to award the damages and interest under Illinois law.

BMO has also not provided an accounting of its attorney fees and costs, despite requesting an award of those undefined amounts. *See PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010) ("Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must show the Court what those damages are, how they are calculated, and where they come from . . . ." (emphasis in original)).

Moreover, BMO separately requests the amounts of attorney fees and costs be addressed later, *after* BMO recovers the Retained Collateral. (*See* doc. 13 at 10).   Such would require the staying of Federal Rule of Civil Procedure 54(d)'s requirement for the filing of a post-judgment motion for attorney fees within fifteen days of any final judgment.   Moreover, BMO has stated that it is "in the process of determining the best means of mitigating its damages through the sale or other disposition of the Recovered Collateral." (*Id.* at 9 n.4).   As a practical matter, were the Court to award damages before BMO mitigates its damages by the sale of the three flatbeds it has already repossessed and the one it anticipates repossessing, the Court would have to later reduce any award to account for such mitigation.

Accordingly, in the interest of avoiding later recalculation, allowing BMO to accurately assess costs and attorney fees at the time of an award, and requiring compliance with this Court's earlier Order, (*see* doc. 12 at 5), the Court declines to award damages, pre- and post-judgment interest, attorney fees, and costs at the present time. Accordingly, the Court finds the motion for default judgment due to be DENIED without prejudice as to damages.

## VI.  CONCLUSION

Accordingly, and for good cause, it is

ORDERED as follows:

1.    BMO's amended motion for default judgment (doc. 13) is GRANTED in part and DENIED in part as follows:

   a.    The motion is GRANTED as to the breach of contract claim against GT (Count IV) and the breach of guaranty claim against Gilmore (Count V).  Any future motion need not address these claims.

   b.    The motion is DENIED as to injunctive relief (Count I) and specific performance (Count II).  Any further motion should not address these claims without good cause.

   c.    The motion is DENIED as to damages, pre- and post-judgment interest, attorney fees, and costs.  Any future motion should address the deficiencies discussed herein. *See* discussion *supra* Part V(C).

2.    BMO's construed application for a writ of replevin (Count III) (doc. 13) is DENIED.

DONE this 9th day of April, 2026.

<div style="margin-left: 40%;">

_____/s/ Emily C. Marks_____

EMILY C. MARKS
UNITED STATES DISTRICT JUDGE

</div>