IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BMO BANK, N.A., | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 3:25-cv-294-ECM [WO] |
| GILMORE TRUCKING LLC, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

## I. INTRODUCTION

On April 17, 2025, BMO Bank, N.A. ("BMO") filed this breach of contract and breach of guaranty action against Gilmore Trucking LLC ("GT") and Willie Gilmore ("Gilmore") (collectively, the "Defendants") for defaulting on three purchase-money loans for four flatbed trailers (the "Collateral").[1] (*See* doc. 1 at 2–7, paras. 9–43).[2]

The Clerk of the Court has entered default against the Defendants for failing to respond or otherwise defend, (doc. 9), and the Court has awarded default judgment against the Defendants as to liability on both claims, (doc. 14).[3] However, the Court declined to

[1] BMO recovered three of the trailers. (Doc. 1 at 6, para. 34; doc. 13-1 at 7, para. 28).

[2] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

[3] As the Court previously noted in its order on default judgment, BMO brought two causes of action: breach of contract against GT ("Count IV") and breach of guaranty against Gilmore ("Count V"). (Doc. 14 at 1). In addition, though styled as causes of action, "Injunctive Relief" ("Count I"), "Specific Performance" ("Count II"), and "Writ of Replevin" ("Count III") are certain remedies BMO seeks for breach of contract and breach of guaranty. (*See* doc. 1 at 8–11, paras. 44–71; doc. 14 at 1 n.3). Counts I–III are therefore DISMISSED as moot because they do not constitute standalone claims and, instead, the Court construes them as requests for relief as to Counts IV and V.

award any remedy subject to further briefing of applicable law by BMO. (Docs. 14, 19). Today, the Court revisits the issue of remedy because BMO has since filed a new motion for default judgment and application for a writ of seizure. (Doc. 21). Ultimately, BMO requests an order:

> (1) granting default judgment in its favor and against Defendants; (2) awarding money damages in favor of Plaintiff and against Defendants in the amount of $78,993.26, plus interest accruing thereon in the amount of $35.62 *per diem* following April 10, 2026 until the date of entry of an Order granting this Motion, plus post-judgment interest which accrues pursuant to 28 U.S.C. § 1961(a); (3) awarding Plaintiff possession of the Retained Collateral and a writ of seizure for the Retained Collateral; (4) awarding Plaintiff its reasonable attorneys' fees and expenses in the amount of $12,895.50; and (5) granting such further relief as is just and proper.

(*Id.* at 17 (emphasis in original)). After careful review of BMO's submissions, and for the reasons that follow, the motion for default judgment against the Defendants is due to be GRANTED, and the application for a writ of seizure is due to be GRANTED in part and DENIED in part.

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. LEGAL STANDARD

Even where a plaintiff satisfies the pleading requirements, "the Court [still must] determine[] the amount and character of damages to be awarded." *Miller v. Paradise of*

*Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).[4] The Court may—but is not required to—hold a hearing before entering an award for damages with a default judgment. *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) (per curiam). But "[d]amages may be awarded without an evidentiary hearing 'only if the record adequately reflects the basis for award via . . . a demonstration by detailed affidavits establishing the necessary facts.'" *Robbie's of Key West v. M/V Komedy III*, 470 F. Supp. 3d 1264, 1268 (S.D. Fla. 2020) (second alteration in original) (quoting *Adolph Coors Co. v. Movement Against Racism & Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)).

## IV. DISCUSSION

### A. Remedies[5]

BMO requests several remedies for GT's breach of contract and Gilmore's breach of guaranty, including money damages and a writ of seizure.[6] As the Court noted previously, and as BMO sets out, Illinois law governs the claims and the substantive relief sought. (Doc. 14 at 7–10, 14–15 & nn.6, 8; *see generally* doc. 21). Under Illinois law,

---

[4] Here and elsewhere, the Court cites to nonbinding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

[5] This recitation of facts is based on the well-plead factual allegations in the complaint, admitted by the Defendants for default judgment purposes. *Giovanno*, 804 F.3d at 1366. The Court also reviewed the exhibits attached to the complaint, (docs. 1-1–6). *See Nationstar Mortgage, LLC v. Holliday*, 2023 WL 2777943, at *1 (N.D. Ala. 2023) ("Attachments to a complaint are 'part of the pleading for all purposes.'" (quoting FED R. CIV. P. 10(c))). The Court also considers the motion for default judgment and its attached declaration with sources. (Docs. 21, 21-1, 21-2). *See Ala. Treatment, LLC v. Waste All., Inc.*, 533 F. Supp. 3d 1082, 1087 (M.D. Ala. 2020) ("Besides the pleadings, a court may also consider evidence presented in the form of an affidavit or declaration." (citation omitted)).

[6] As noted previously by the Court, guaranties are governed by contract principles. (Doc. 14 at 10 (citing *Amos Fin., LLC v. Szydlowski*, 214 N.E.3d 158, 166 (Ill. App. 2022)). And here, the three disputed guaranties concerned Gilmore's "'guarantee[ of] the full and timely performance of [GT]' on each of the three loan agreements." (*Id.* at 10 (second alteration in original) (quoting (doc. 1 at 4, para. 20)). Because Gilmore's exposure to damages is coextensive with GT's, the Court does not distinguish them herein.

contractual secured transactions involving personal property are governed by statute. 810 ILL. COMP. STAT. § 5/9-109(a)(1). Upon a debtor's default, the secured creditor "may reduce a claim to judgment, foreclose, or otherwise enforce the . . . security interest . . . by any available judicial procedure." *Id.* § 5/9-601(a)(1). The secured party can exercise these rights simultaneously until the debt is satisfied. *Id.* § 5/9-601(c); *see* 68A AM. JUR. 2D, Secured Transactions § 414 (May 2026 ed.) ("A secured creditor may take any action or combination of actions until the debt is satisfied, subject to the limitation that the creditor can obtain only one satisfaction of the debt."). Thus, BMO can seek both damages and possession of the collateral to satisfy the Defendants' debt.[7] The Court discusses each requested remedy in turn.

**1. Damages and Interest**

The Court begins with money damages and the associated interest. In support of that analysis, BMO has provided the Court with detailed affidavits and accountings of all amounts owed. The Court finds these documents sufficient to determine damages. (*See generally* doc. 21-1 (affidavit and accounting of damages after mitigation); doc. 21-2 (affidavit and accounting of attorney fees)).

BMO's documents show the following: (1) upon default, the principal amount of $87,689.49 was due to BMO under the agreements, (doc. 21-1 at 6, para. 14); (2) the agreements provided for fees and interest that would accrue, obligating the defaulting

[7] The Court previously applied the general rule under Illinois law that injunctive remedies were unavailable when monetary damages are available. (Doc. 14 at 14–15). Because BMO has now addressed the applicable statutory law in this context, the Court no longer analyzes the issue under that general rule.

debtor to interest on "all unpaid amounts at the rate of 1.5% per month or the maximum rate not prohibited by applicable law[] . . . calculated based on a 360-day year consisting of 30-day months," (*id.* at 6, paras. 15–16); and (3) after recovering three of the trailers at great cost and selling them at auction, the net proceeds were applied to the owed balance and $78,993.26 remained outstanding as of April 10, 2026, (*id.* at 6, para. 18). Interest on that remaining amount is "due and owing . . . at the rate of $35.62 per [day]." (*Id.* at 6, para. 18 (emphasis omitted)). Thus, as of November 13, 2026, the total amount owed, inclusive of pre-judgment interest is $86,722.80.

BMO only seeks damages in the amount owed, and the Court finds that those damages are justified under Illinois law because they would compensate BMO as if the contracts and guaranties had been performed by the Defendants. *Morse v. Donati*, 136 N.E.3d 1043 (Ill. App. 2019) ("The measure of the 'actual loss' is the damages that are compensatory, in restitution for the harm caused, and that make the plaintiff whole again, but do not place him or her in a better position than if the contract had been performed." (citing *Wanderer v. Plainfield Carton Corp.*, 351 N.E.2d 630, 635 (Ill. App. 1976))); *see McHenry Sav. Bank v. Pioneer Nat. Title Ins.*, 540 N.E.2d 357, 361 (Ill. App. 1989) (permitting recovery under contract of the secured indebtedness "plus any interest due thereon."). And the principal, schedule of fees, and interest under default—mutually agreed upon in the contracts between the parties, (*see* doc. 21-1 at 6, paras. 13–18)—were clearly foreseeable in the event of breach and thus recoverable. *See Union Tank Car Co. v. NuDevco Partners Holdings, LLC*, 123 N.E.3d 1177, 1188 (Ill. App. 2019) (citing *Midland*

*Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 67 (Ill. 1987)). Accordingly, the Court awards BMO damages of $86,722.80 against the Defendants.

Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Accordingly, the Court also awards BMO post-judgment interest at a rate of 4.44%. *See id.* ("Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding.").

**2. Writ of Seizure**

Next, the Court addresses BMO's application for a writ of seizure.[8] After a debtor's default, a secured party may repossess collateral without a court order so long as there is no breach of peace. 810 ILL. COMP. STAT. § 5/9-609(a)(1), (b)(1)–(2). However, the secured party may also proceed "pursuant to judicial process." *Id.* § 5/9-609(b)(1). Here, the Defendants have defaulted on their obligations, the Court has found them liable, (*see* doc. 14), and thus BMO is entitled to repossession of the collateral by judicial process.

BMO, however, is not entitled to this relief in the form of a prejudgment writ of replevin under the Alabama Rules of Civil Procedure. *See* FED. R. CIV. P. 64(a) (incorporating any prejudgment remedies "under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential

---

[8] In its complaint, BMO requested a writ of replevin. (Doc. 1 at 10, paras. 62–71). However, in its motion for default judgment and application for a writ of seizure, BMO acknowledges that a writ of replevin is likely inappropriate at this stage of the proceedings. (Doc. 21 at 7, 15). Nonetheless, BMO addresses the standard for a writ of replevin "should the Court find that it applies here." (*Id.* at 15). The Court will therefore address this issue.

judgment."). As BMO recognizes, a writ of replevin is a prejudgment remedy, not a form of ultimate relief. (Doc. 21 at 15; *see* doc. 14 at 13 ("[A] writ of replevin is a prejudgment remedy; this case is in a final judgment posture.")). And in any event, BMO's affidavit does not satisfy the requirement that the affiant provide "[a] description of the claimed property that is sufficient to identify . . . its location," ALA. R. CIV. P. 64(b)(1)(A), because it expressly notes that "on any given day the [collateral] is located, or is capable of being located, in diverse places throughout the United States," (doc. 21-1 at 10, para. 39). BMO's application for a writ of replevin is therefore due to be denied.

Nevertheless, BMO has another form of relief available—specific performance of the contractual provision to retain the collateral in the event of default. To that end, BMO asks the Court to enter an order as follows:

> i. Plaintiff is entitled to the immediate possession of the Retained Collateral, identified in the Motion and summarized as follows: 2019 Utility Flatbed, VIN: 1UYFS2482K5555457;
>
> ii. Borrower shall immediately notify all of its responsible managing agents, officers, directors, and employees of the entry of this Order and the terms thereof;
>
> iii. Upon request of Plaintiff, the Federal Marshal or Sheriff where the Retained Collateral may be situated, or any duly authorized representative(s) of the same, is directed to seize the Retained Collateral by any and all legal means. If the Retained Collateral, or any of it, is concealed in a building or elsewhere, and a demand made by the Marshal and/or its representative(s) for its delivery is refused or there is no response, then the Marshal shall cause the building or other enclosure to be broken open and shall take the Retained Collateral therefrom, or, alternatively, shall secure the building or other enclosure by any reasonable means including, without limitation, changing the locks of the building or other enclosure. Plaintiff has posted

> a bond in the amount of $31,000.00, and no additional bond shall be required . . . .

(Doc. 21-3 at 2).

Illinois statutory law is clear that a secured creditor "may . . . enforce the . . . security interest . . . by *any available judicial procedure*." 810 ILL. COMP. STAT. § 5/9-601(a)(1) (emphasis added); *see* 33 ILL. L. & PRAC. SECURED TRANSACTIONS § 275 (Aug. 2026 ed.). In addition, "the principles of law and equity . . . supplement [Illinois statutory] provisions," 810 ILL. COMP. STAT. § 5/1-103(b), thereby allowing courts to enforce a contract by specific performance when the contract's terms are "certain and unambiguous," *Schilling v. Stahl*, 918 N.E.2d 1077, 1080 (Ill. App. 2009) (citing *Cefalu v. Breznik*, 154 N.E.2d 237, 239 (Ill. 1958)); *accord Walker v. Tucker*, 70 Ill. 527, 532 (Ill. 1873) ("[W]here the language [of a contract] is unambiguous . . . . the legal effect of the agreement must be enforced." (citations omitted)). In other words, "[p]arties have the right to make their own agreements; and it is the duty of the courts to enforce them, and not to encourage their violation." *Taylor v. Beck*, 13 Ill. 376, 387 (1851); *see Smith v. Brown*, 10 Ill. 309, 314 (Ill. 1848).

Considering these principles and the totality of the circumstances, ordering specific performance in this case would "do more perfect and complete justice." *Daniels v. Anderson*, 642 N.E.2d 128, 132 (Ill. 1994) (citation omitted); *see Schiff v. Breitenbach*, 153 N.E.2d 549, 551 (Ill. 1958) ("[T]he granting of such equitable relief is not a matter of right but rests in sound judicial discretion to be determined from the facts and circumstances of each individual case." (citations omitted)). The Court therefore finds it appropriate to order

the Defendants to uphold their contractual obligation to return collateral in the event of default. However, the Court has serious prudential concerns about enlisting the United States Marshal Service as BMO's agents to search for and seize a highly mobile piece of equipment. Courts have expressed similar concerns in other cases involving BMO:

> I believe that [BMO]'s proposed default judgment does not reflect the appropriate role of the United States Marshal in enforcing the judgment, nor the necessary means of obtaining the assistance of the Marshal. BMO . . . has proposed Order of Possession language requiring [GT] AND [Gilmore] to promptly identify to [BMO] the whereabouts of all Retained Collateral, and thereafter to promptly surrender it to [BMO]. I have retained this language in the default judgment to be entered. But in addition to this self-actuating injunctive language, [BMO]'s proposed default judgment attempts to authorize the United States Marshal, presumably (but not explicitly) in the event of defendants' non-compliance with self-surrender, to "seize the Retained Collateral by any and all legal means" at [BMO]'s request. . . .
>
> The Marshal w[ill] in no event function as [BMO]'s investigators attempting to locate Retained Collateral. And rather than order that the Marshal can break and enter or change locks on enclosures where Retained Collateral may be found – measures for which [BMO] cites no authority – I would be inclined to leave the conduct of the Marshal's Service to be governed by its own applicable authorities. . . . [A]nd what fees the Marshal would be entitled to for efforts . . . are matters governed by other authorities and on which I would not now presume to rule.

*BMO Harris Bank N.A. v. Trans Liner Corp*, 2021 WL 1686862, at *3 (N.D. Ind. 2021). Likewise, the undersigned will enter an appropriately tailored order that the Defendants turn over the collateral to BMO without unnecessarily involving the Marshal's Service. *See, e.g.*, *BMO Harris Bank N.A. v. EA Express LLC*, 2023 WL 12146847, at *4 (N.D. Ill.

2023). Should the Defendants fail to comply with an order of the Court, suitable further orders will issue.

**B. Attorney Fees and Costs**

Finally, the Court addresses attorney fees and costs. Under Illinois law, a prevailing party in a breach of contract action is entitled to attorney fees where "the contract provides for the award of such fees." *Grossinger Motorcorp, Inc. v. Am. Nat'l Bank & Tr. Co.*, 607 N.E.2d 1337, 1347 (Ill. App. 1992) (citations omitted). In such circumstances, the fees must be reasonable. *Id.* at 1348 (citation omitted). Reasonableness includes consideration of the following factors,

> (1) the attorney[s'] skill and standing, (2) the time and labor required, (3) the nature of the cause and the difficulty of the issues involved, including the amount of money at issue, (4) the novelty and difficulty of the subject matter, (5) the attorney[s'] degree of responsibility in managing the case, (6) the usual and customary charge for that type of work in the community, and (7) the benefits resulting to the client.

*Andrew W. Levenfeld & Assocs., Ltd. v. O'Brien*, 248 N.E.3d 1053, 1066 (Ill. 2024). "The determination of reasonableness is a matter for the trial court's discretion." *J.B. Esker & Sons, Inc. v. Cle-Pa's P'ship*, 757 N.E.2d 1271, 1277 (Ill. App. 2001).

Here, attorney fees were clearly contemplated in the agreements. (*See* doc. 21-2 at 3, para. 8 (citing docs. 1-1–3)). BMO has also provided an affidavit of counsel and a schedule of fees. (*See generally* doc. 21-2). Upon review, the Court agrees that this case involved rates "at or below market for the State of Alabama." (Doc. 21-2 at 4, para. 13). This case involved four attorneys and one paralegal, the chief of which had practiced "commercial litigation related to financial transactions for more than eighteen years" and

another who had practiced the same for more than ten years. (*Id.* at 21-2 at 5, para. 15). The case entailed a combined 36.3 manhours of billed time. (*Id.*). The attorneys have succeeded in obtaining an order facilitating repossession of the collateral and $86,722.80 in damages plus interest—all the relief sought by their client. The issues were not simple but involved issues of federal, Illinois, and Alabama law. Apparent from the docket, the attorneys addressed this case in a diligent and timely fashion. In light of the foregoing, the Court finds that all applicable factors indicate that the fees of $12,320.50 are wholly reasonable, and awards them, along with the $575 in accounted for costs. *See* FED. R. CIV. P. 54(d)(1) ("[C]osts—other than attorney's fees—should be allowed to the prevailing party.").

## V. CONCLUSION

Accordingly, and for good cause, it is

ORDERED as follows:

1. BMO's amended motion for default judgment and application for writ of seizure, (doc. 21), are GRANTED in part and DENIED in part as follows:

   a. The motion for default judgment is GRANTED.

   b. The application for a writ of seizure is DENIED to the extent it requests a writ of replevin.

   c. The application for a writ of seizure is GRANTED to the extent it requests specific performance.

2. Default judgment is GRANTED for BMO against GT for breach of contract (Count IV) and against Gilmore for breach of guaranty (Count V). (*See* doc. 14).

3. BMO is entitled to possession of the retained collateral. Upon service of this Memorandum Opinion and Order and accompanying Final Judgment on the Defendants, the Defendants shall turn over the retained collateral, specifically, the flatbed trailer, VIN: IUYFS2482K5555457. To that end, the Defendants and any person or entity in active concert or participation with the Defendants having actual notice of this Order by personal service or otherwise, are hereby enjoined and restrained as follows: (i) from transporting, using, pledging, selling, transferring, or disposing of the retained collateral either in the operation of the business of the Defendants or otherwise, except as may be necessary to move or transport the retained collateral in order to comply with this Order; and (ii) restricting, limiting, or conditioning either the access of BMO to the retained collateral, or BMO's ability to take possession of the retained collateral.

The Defendants and any person or entity in active concert or participation with the Defendants having actual notice of this Order by personal service or otherwise, are hereby required to: (i) contact BMO through its counsel Ryan Burgett and Adam Buddenbohn (by email to ryan.burgett@huschblackwell.com and adam.buddenbohn@huschblackwell.com) by the end of the next business day after receiving notice of this Order and disclose the precise location of the retained collateral; and (ii) by the end of the second business day after receiving notice of this Order, surrender the retained collateral in its possession, custody, or control to BMO at one or more locations to be designated by BMO and take all actions necessary to allow BMO to obtain access to and possession of the retained collateral, including terminating subleases, if any, and obtaining the retained collateral

from any third parties who may have possession, custody, or control over the retained collateral.

Upon receipt of the collateral, BMO shall timely sell the collateral in accordance with Illinois law. Within seven days of the sale, BMO shall file a notice on the docket informing the Court and the Defendants of the sale amount. BMO must deduct the amount recovered by sale from the damages awarded.

4. BMO is awarded $86,722.80 in damages against the Defendants, jointly and severally.

5. BMO is awarded post-judgment interest at the rate of 4.44% on the $86,722.80 awarded against the Defendants in accordance with 28 U.S.C. § 1961(a).

6. BMO is awarded $12,320.50 in attorney fees and $575 in costs against the Defendants, jointly and severally.

7. Counts I, II, and III are DISMISSED as moot.

A separate Final Judgment will be entered.

The Court retains jurisdiction of this case to enforce its judgment.

DONE this 13th day of November, 2026.

/s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE